UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:17-cv-00580-FDW

| | |
|---|---|
| CARLA CRAIG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | ORDER |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

THIS MATTER is before the Court on Plaintiff Carla Craig's Motion for Summary Judgment (Doc. No. 11) and Defendant Acting Commissioner of Social Security Nancy A. Berryhill's ("Defendant") Motion for Summary Judgment (Doc. No. 17). Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on her application for Disability Insurance Benefits under 42 U.S.C. § 405(g).[1] For the reasons that follow, Plaintiff's Motion for Summary Judgment is DENIED, and Defendant's Motion for Summary Judgment is GRANTED. Accordingly, the Commissioner's decision is AFFIRMED.

## I. BACKGROUND

Carla Craig ("Plaintiff") filed an application for disability and disability insurance benefits on November 22, 2013 (Tr. 24, 38), alleging disability since January 1, 2008. (Tr. 24, 165). Plaintiff's application was initially denied on April 15, 2014 (Tr. 99) and denied again at reconsideration on June 2, 2014 (Tr. 108). Plaintiff filed a request for a hearing on June 19, 2014.

---

[1] "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.A. § 405.

1

(Tr. 24). An Administrative Law Judge ("ALJ") conducted the hearing in Charlotte, North Carolina, on May 24, 2016. (Tr. 128, 141). The ALJ denied Craig's application in a written decision dated August 3, 2016. (Tr. 21).

In reaching her decision, the ALJ used the five-step sequential evaluation process for the evaluation of claims for disability under the Act. (Tr. 25-38); 20 C.F.R. § 404.1520(a)(4). At step one of the process, the ALJ found Plaintiff had not engaged in substantial gainful activity since the Plaintiff's application date, November 22, 2013. (Tr. 26). At step two, the ALJ found Plaintiff had the following severe impairments: "hypertension, obesity, right knee degenerative joint disease, degenerative disc disease, bipolar disorder, depression, and post-traumatic stress disorder (PTSD)[.]" (Tr. 26). At step three, the ALJ found Plaintiff did "not have an impairment or combination of impairments" that met or medically equaled any of the Listings found in 20 CFR Part 404, Subpart P, App. 1. (Tr. 27).

Then, the ALJ determined Plaintiff:

> has the residual functional capacity to perform light work as defined in 20 [§] CFR 416.967(b) except she would need to alternate between sitting and standing, up to two times each hour. She can frequently, but not continuously perform all postural activities, but should avoid workplace hazards, such as ladders, ropes, scaffolds, unprotected heights, and machinery with dangerous parts. She can maintain occasional public contact or interactions and can otherwise frequently, but not continuously, interact with coworkers and supervisors. She can follow short simple instructions, not detailed, and perform detailed tasks, but no work requiring a production rate or demand pace. She should avoid crisis situations[,] complex decision making[,] or constant changes in routine setting. Stay on task, sustaining attention and concentration for two hours at a time, and would need one to two additional five min[ute] rest breaks.

(Tr. 29). Also, at step four, the ALJ found Plaintiff could no longer perform any of her past relevant work. (Tr. 37). At step five, the ALJ considered Plaintiff's RFC, age, education, work experience, the Vocational Expert's ("VE") testimony, and information provided by the Dictionary of

Occupational Titles ("DOT"), and found that in light of those factors, Plaintiff could perform other jobs existing in significant numbers in the national economy. (Tr. 37). Accordingly, the ALJ decided Plaintiff was not disabled under the Act. (Tr. 38).

On July 28, 2017, the Appeals Council denied Plaintiff's request to review the hearing decision. (Tr. 1). Therefore, the ALJ's August 3, 2016, decision became the final decision of the Commissioner. Subsequently, Plaintiff brought this action and the parties filed motions for summary judgement. The motions are now ripe for review.

## II. STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides judicial review of the Social Security Commissioner's denial of social security benefits. When examining a disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence. 42 U.S.C. § 405(g); Westmoreland Coal Co., Inc. v. Cochran, 718 F.3d 319, 322 (4th Cir. 2013); Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). A reviewing court may not re-weigh conflicting evidence or make credibility determinations because "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 2013).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (alteration and internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir.

3

2015) (internal quotation marks omitted). Courts do not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; "[w]here conflicting evidence allows reasonable minds to differ," courts defer to the ALJ's decision. Johnson, 434 F.3d at 653.

"In order to establish entitlement to benefits, a claimant must provide evidence of a medically determinable impairment that precludes returning to past relevant work and adjustment to other work." Flesher v. Berryhill, 697 F. App'x 212 (4th Cir. 2017) (citing 20 C.F.R. §§ 404.1508, 404.1520(g)). In evaluating a disability claim, the Commissioner uses a five-step process. 20 C.F.R. § 404.1520(a). Pursuant to this five-step process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy. 20 C.F.R. § 404.1520(a) ; see also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017) (citing Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015)); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See Lewis, 858 F.3d at 861; Monroe v. Colvin, 826 F.3d 176, 179–80 (4th Cir. 2016).

"If the claimant fails to demonstrate she has a disability that meets or medically equals a listed impairment at step three, the ALJ must assess the claimant's residual functional capacity ("RFC") before proceeding to step four, which is 'the most [the claimant] can still do despite [her physical and mental] limitations [that affect h[er] ability to work].'" Lewis, 858 F.3d at 861–62

4

(quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)). In <u>Lewis</u>, the Fourth Circuit explained the considerations applied before moving to step four:

> [The RFC] determination requires the ALJ to "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." <u>Mascio</u>, 780 F.3d at 636 (internal quotations omitted); <u>see also</u> SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). Once the function-by-function analysis is complete, an ALJ may define the claimant's RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1. <u>See</u> <u>generally</u> 20 C.F.R. §§ 404.1567, 416.967 (defining "sedentary, light, medium, heavy, and very heavy" exertional requirements of work).
>
> When assessing the claimant's RFC, the ALJ must examine "all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," 20 C.F.R. §§ 404.1525(a)(2), 416.925(a)(2), "including those not labeled severe at step two." <u>Mascio</u>, 780 F.3d at 635. In addition, he must "consider all [the claimant's] symptoms, including pain, and the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," 20 C.F.R. §§ 404.1529(a), 416.929(a). "When the medical signs or laboratory findings show that [the claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [her] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [her] symptoms limit [her] capacity for work." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

<u>Lewis</u>, 858 F.3d at 862.

Proceeding to step four, the burden remains with the claimant to show he or she is unable to perform past work. <u>Mascio</u>, 780 F.3d at 635. If the claimant meets their burden as to past work, the ALJ proceeds to step five.

> "At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." [<u>Mascio</u>, 780 F.3d at 635 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429)]. "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." <u>Id</u>.

5

Lewis, 858 F.3d at 862. If the Commissioner meets this burden in step five, the claimant is deemed not disabled, and the benefits application is denied. Id.

### III. ANALYSIS

Plaintiff claims the ALJ erred when determining Plaintiff's RFC by: (1) improperly weighing a medical opinion; (2) including a sit/stand exception to the RFC, while failing to specify the duration permitted in each alteration of postures; and (3) improperly assessing Plaintiff's credibility and symptoms based on Plaintiff's performance of certain activities. (Doc. No. 12 at 7-13). Plaintiff also argues the ALJ failed to obtain an explanation from the VE for testimony that allegedly conflicts with the DOT. (Doc. No. 12 at 13-14). The Court addresses these in turn.

**A. The ALJ's RFC Determination**

**1. Assignment of Weight to Medical Opinion**

In general, an ALJ's assessment of the weight to be accorded to a medical opinion source will not be disturbed by a reviewing court. Dunn v. Colvin, 607 F. App'x 264, 267 (4th Cir. 2015). Medical opinions are statements from acceptable medical sources which reflect "judgments about the nature and severity of the claimant's impairment, including the claimant's symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairment, and the claimant's physical or mental restrictions." McDonald v. Colvin, No. 3:15-CV-00598-MOC, 2016 WL 4084040, at *3 (W.D.N.C. July 29, 2016) (citing 20 C.F.R. § 404.1527(a)(2)).

"An ALJ must evaluate every medical opinion in the record." McDonald, 2016 WL 4084040, at *3 (citing 20 C.F.R. § 404.1527(c)). Medical opinions are evaluated and weighed by the ALJs in accordance with the "following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3)

the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson, 434 F.3d at 654 (citing 20 C.F.R. § 404.1527). "Although the regulations do require the ALJ to consider these factors in determining what weight to allot to medical opinions, the ALJ does not have to specifically discuss each one." Clontz v. Astrue, No. 2:12-cv-13-FDW, 2013 WL 3899507, at *7 (W.D.N.C. July 29, 2013).

Under the treating physician rule, a court is generally required to give greater weight to a treating physician's testimony, but a court is not required to give the treating physician's testimony controlling weight. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001); see also Mitchell v. Schweiker, 699 F.2d 185, 187 (4th Cir. 1983) (defining a "treating physician" as a physician who has continually observed the Plaintiff's condition over a prolonged period of time). While "courts often accord greater weight to the testimony of a treating physician because the treating physician has examined the claimant and has a historical treatment relationship [with the claimant], no such deference is required for a consultative exam." McDonald, 2016 WL 4084040, at *4 (citing SSR 96–2P, 1996 WL 374188 (July 2, 1996)) (internal citations omitted).

"Nontreating source means a physician, psychologist, or other acceptable medical source who has examined [the claimant.]" 20 C.F.R. Part 404, Subpart P, ¶ 13732, 2015 WL 8459550 (2018) (citing 20 C.F.R. § 404.1507). Consultative examiners are considered a nontreating source because the examiner's relationship with the claimant is based solely on the claimant's "need to obtain a report in support of [the claimant's] claim for disability," 20 C.F.R. § 404.1527(a)(2), instead of "an ongoing treatment relationship with [the claimant]," 20 C.F.R. Part 404, Subpart P, ¶ 13732, 2015 WL 8459550. "[O]pinions from sources other than treating sources can never be entitled to 'controlling weight.'" SSR 96-2P. "While the ALJ may choose to give 'great weight'

7

to the opinion of a nontreating source, an ALJ is not obligated to do so." McDonald, 2016 WL 4084040, at *4 (citing SSR 96–2P).

At issue in this case is the opinion of a nontreating medical source. Here, the ALJ accorded the opinion of Dr. Marjorie Patricia Hogan, a state agency medical consultant, some weight. (Tr. 36-37). According to the ALJ, more weight was not assigned to Dr. Hogan's opinion because it was based "mostly on subjective complaints" and there were many discrepancies between Dr. Hogan's report and the reports of two prior consultative examiners. (Tr. 36-37). Plaintiff alleges the assignment of this weight was an error because the ALJ failed to "note a single instance of Dr. Hogan citing to [Plaintiff's] 'subjective complaints'" or "point out the discrepancies between the reports." (Doc. No. 12 at 7-8).

Plaintiff's argument is unavailing. First, the ALJ is required to weigh medical opinions based on five factors—including supportability of the physician's opinion. 20 C.F.R. § 404.1527(c). A medical opinion's reliance on the claimant's subjective complaints is relevant to its supportability even when the physician observed the claimant. Plaintiff also has cited no authority requiring the ALJ to list the subjective complaints. Second, when noting the discrepancies between Dr. Hogan's report and the other consultative examinations, the ALJ cited Dr. Hogan's own findings of inconsistency. (Tr. 36-37 (citing Ex. 9F/5-6)). According to Dr. Hogan, the timing of Plaintiff's reported mental health treatment "was not clear, given inconsistencies between her report [to Dr. Hogan] and that given in previous evaluations." (Tr. 1008). Dr. Hogan described some of the inconsistencies between her evaluation and Dr. Steinmuller's evaluation, such as Plaintiff reporting to fail a different grade, denying she ever attempted suicide, providing different dates of hospitalization, and reporting different dates for

8

when Plaintiff first suffered from depression. (Tr. 1007-08). Dr. Hogan was uncertain whether these inconsistencies were a result of Plaintiff being "very confused about time frames and symptoms" or whether Plaintiff was attempting to be "deliberately deceptive." (Tr. 1007-08). Third, the ALJ only gave some weight to Dr. Hogan's opinion because she did not find any limitations in social functioning. (Tr. 37). Specifically, the ALJ noted Dr. Hogan's reliance on claimant's report of "no conflicts with others in a work setting, despite previous complaints of isolative behavior" when assessing the weight of her opinion. (Tr. 37). As raised by Defendant, this assessment resulted in a more restrictive RFC as to social functioning, which is not prejudicial to Plaintiff. (Doc. No. 18 at 5). As the Court can meaningfully review the ALJ's assignment of weight and the ALJ supported his decision with sufficient reasons, the Court finds no reversible error.

### 2. Specificity of the Sit/Stand Option

Plaintiff alleges that "[t]he ALJ's description of the sit/stand option—'sit and stand option, up to two times each hour'—is too vague to be of use in soliciting testimony from a VE." (Doc. No. 12 at 10). However, "no extra-statutory standard of clarity has been established [by the Social Security Act] and the measure remains one of substantial evidence." Walls v. Barnhart, 296 F.3d 287, 291 (4th Cir. 2002). "A special clarity criterion would require the agency to support its decisions by more than the statutorily designated substantial evidence burden." Id. (upholding an ALJ's RFC determination as clear whenever the VE knew he was responding to the ALJ's instruction to provide for no prolonged walking and standing, and allow for a sit/stand option at the claimant's discretion); Cogar v. Colvin, No. 3:13-CV-380-FDW, 2014 WL 1713795, at *6 (W.D.N.C. Apr. 30, 2014) (upholding an RFC option as sufficiently specific where the ALJ

9

informed the VE that a claimant "must be allowed to alternate from sitting and standing 'to accommodate discomfort'"). Here, as raised by Defendant, there is substantial evidence. The ALJ's finding "is consistent with Plaintiff's reports during her consultative examinations where she stated that she could only stand for 30 minutes at a time and could not stand or sit for long periods." (Doc. No. 18 at 5-6 (citing Tr. 32, 993, 1011)).

### 3. Evaluation of Symptoms[2]

Relying on SSR 16-3p, Plaintiff asserts the ALJ incorrectly drew "adverse credibility inferences from [the claimant's] minimal daily activities without seeking explanation from the claimant[,]" or considering that her activities were structured so as to allow for Plaintiff's limitations. (Doc. 12 at 13). However, SSR 16-3p does not impose such requirements.

In evaluating the intensity, persistence and limiting effects of an individual's symptoms, the ALJ will consider such factors as Plaintiff's medical history, laboratory findings, treatment history, and reported daily activities. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2016 WL 1119029 (Mar. 16, 2016) (citing 20 C.F.R. §§ 404.1529(c), 416.929(c)). The Fourth Circuit has recognized a claimant's daily activities may support a determination of no disability under the Act. Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994).

SSR 16-3p indicates that ALJs "will consider and address reasons for not pursuing treatment" including the individual's structuring of "activities to minimize symptoms to a tolerable level." Id. Plaintiff has not cited nor can the Court find such a requirement as to daily activities.

---

[2] SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2016 WL 1119029 (Mar. 16, 2016) supersedes SSR 96-7p; Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186 (S.S.A. July 2, 1996). SSR 16-3p eliminates the use of the term "credibility" in the SSA's regulatory policy.

Instead, as done here, the ALJ considers the type of activities and the extent of activities done by Plaintiff. Johnson, 434 F.3d at 658 (4th Cir. 2005) (upholding a finding that claimant's routine activities—including attending church, visiting relatives, reading, watching television, cooking, cleaning the house, and doing laundry—were inconsistent with complaints of pain); cf. Woods v. Berryhill, 888 F.3d 686, 694 (4th Circ. 2018). The ALJ found:

> inconsistent with the claimant's allegations regarding debilitating pain and inability to stand or lift any amount of weight, the claimant reported spending time with her 7 month old granddaughter, performed light household chores, including laundry, and was able to perform eight minutes of treadmill on a stress test (Ex. 8F/3, 5; 30F/6). Moreover, inconsistent with her testimony, the claimant routinely reported that she performed light household chores, grocery shopped, enjoyed spending time with her daughter and mother, enjoyed Bingo as a social activity, plays games on the computer and watches TV, indicating that the claimant's conditions may not be as serious as alleged (Ex. 4F, 8F, 9F).

(Tr. 35).

Additionally, as raised by Defendant, the ALJ noted "claimant was not consistent in reporting pain to the back and knees, . . . indicating that her conditions are not as debilitating as she claims." (Tr. 35); (Doc. No. 18 at 8 (citing Tr. 30-35). Plaintiff in response attempts to explain the omissions (Doc. No. 19 at 7-8), but this Court does not make a de novo determination of Plaintiff's credibility or symptoms.

Here, the ALJ's decision listed "specific reasons for the weight given to the individual's symptoms, [was] consistent with and supported by the evidence, and [was] clearly articulated so the individual and any subsequent reviewer c[ould] assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p. Plaintiff has not shown cause for remand.

B.     **Apparent Conflict**

At step five, the ALJ: (1) "must ask the vocational expert . . . if the evidence he or she has provided conflicts with information provided in the [DOT]" and (2) "if the vocational expert's . . . evidence appears to conflict with the [DOT], the ALJ must obtain a reasonable explanation for the apparent conflict." Pearson, 810 F.3d at 208 (internal quotations omitted). An "apparent conflict" is one "where the expert's testimony seems to, but does not necessarily, conflict with the [DOT]." Id. at 209.

Here, Plaintiff argues that there is a conflict between the RFC's sit/stand option and the DOT, which does not address sit/stand options. (Doc. No. 12 at 11-12). Plaintiff reasons the ALJ erred by failing to identify or obtain a reasonable explanation for this conflict. (Doc. No. 12 at 11). However, this Court agrees with other courts[3] finding that "[b]ecause the DOT is silent on the availability of the [sit/stand] option, it cannot be said that a VE testifying about the option would be in conflict with the DOT." Cogar, 2014 WL 1713795, at *7 (citing Luke v. Astrue, 1:11–CV–196–MKR, 2013 WL 498797, at *5 (W.D.N.C. Feb. 11, 2013)); see also Gordon v. Berryhill, No. 3:16-CV-130, 2017 WL 5759940, at *4 (W.D.N.C. Nov. 28, 2017); Baldwin v. Colvin, No. 2:12–CV–76–RLV, 2014 WL 3939213, at *5 (W.D.N.C. Aug. 12, 2014). Reliance on the VE's testimony is proper as the "ALJ's hypothetical question encompassed all of the limitations from the RFC finding, including Plaintiff's limitation requiring a sit/stand option" and the "VE was an expert with an on-going knowledge of vocational practices who is qualified to determine which jobs Plaintiff could or could not perform." Ruff v. Colvin, No. 1:12-CV-165-RJC, 2013 WL 4487502, at *7 (W.D.N.C. Aug. 20, 2013). Further, Plaintiff's assignment of error suggests the

---

[3] The Fourth Circuit has not addressed whether the DOT's silence on a matter creates an apparent conflict that the ALJ must raise. The District Courts in this Circuit have not reached a consensus on the matter.

ALJ has an independent obligation to identify all conflicts. The court in Pearson expressly rejected the plaintiff's view that SSR 00-4P requires the ALJ to "*independently* identify all 'possible' conflicts between the expert's testimony and the *Dictionary*[,]" 810 F.3d at 208, because it "would require the ALJ to do more than simply compare the express language of the *Dictionary* and the vocational expert's testimony, and would allow the claimant to nitpick an ALJ's or expert's word choice on appeal[,]" id. at 209. Thus, the Court finds no error where nothing stated by the VE seems to conflict with the DOT and the VE testified there was no conflict. (Tr. 38, 63).

## IV. CONCLUSION

In reviewing all assignments of error by Plaintiff, the Court concludes the ALJ's decision sufficiently explains the basis for the decision and is supported by substantial evidence.

IT IS THEREFORE ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 11) is DENIED; Defendant's Motion for Summary Judgment (Doc. No. 17) is GRANTED; and the Commissioner's decision is AFFIRMED for the reasons stated herein.

IT IS SO ORDERED.

Signed: July 30, 2018

Frank D. Whitney
Chief United States District Judge